## COURT OF COMMON PLEAS
## CLERMONT COUNTY, OHIO

| | |
|---|---|
| **TOTAL QUALITY LOGISTICS, LLC**<br>4289 Ivy Pointe Blvd.<br>Cincinnati, OH 45245<br><br>    Plaintiff,<br><br>vs.<br><br>**COVAR TRANSPORTATION** d/b/a<br>**COVAR BROKERAGE**<br>2189 Cleveland Street<br>Clearwater, FL 33765<br><br>Also Serve Registered Agent:<br><br>COLLIN COVE<br>21289 Cleveland Street<br>Clearwater, FL 33765<br><br>and<br><br>**DAVID R. MINNIS**<br>17730 Jamestown Way<br>Lutz, FL 33558<br><br>and<br><br>**JOHN E. FLETCHER**<br>13332 Lake George Ln.<br>Tampa, FL 33615<br><br>and<br><br>**TODD L. BRAZEAL**<br>8501 N. Parkwood Ave.<br>Tampa, FL 33604<br><br>and<br><br>**CHASE W. WALKER**<br>5344 Aaron Lane<br>Spring Hill, FL 34608<br><br>and | Case No. 2017 CVH 01403<br><br>(Judge Haddad)<br><br><br><br>**SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br><br>COMMON PLEAS COURT<br>FILED<br>NOV 13 2017<br>BARBARA A. WIEDENBEIN<br>CLERK<br>CLERMONT COUNTY, OH |

635570

**CAMERON BROWN**
3948 Tumble Wood Trl.
Tampa, FL 33613

　　　Defendants.

Plaintiff, Total Quality Logistics, LLC ("TQL"), for its Second Amended Complaint against the Defendants, David Minnis, John Fletcher, Todd Brazeal, Chase Walker, Cameron Brown, and Covar Transportation d/b/a/ Covar Brokerage, states, upon information and belief, as follows:

## NATURE OF THE ACTION

1. The Defendant David Minnis ("Minnis") is a former employee of the Plaintiff TQL. He is bound by TQL's "Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement" (the "Agreement"), which he signed August 17, 2015, a true and accurate copy of which is attached as Exhibit 1. His employment from TQL terminated on July 27, 2016.

2. The Defendant John Fletcher ("Fletcher") is a former employee of the Plaintiff TQL. He is bound by TQL's "Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement" (the "Agreement"), which he signed on February 2, 2014, a true and accurate copy of which is attached as Exhibit 2. His employment with TQL terminated on September 1, 2016.

3. The Defendant Todd Brazeal ("Brazeal") is a former employee of the Plaintiff TQL. He is bound by TQL's "Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement" (the "Agreement"), which he signed on August 19, 2013, a true and accurate copy of which is attached as Exhibit 3. His employment terminated on September 16, 2016.

4. The Defendant Chase Walker ("Walker") is a former employee of the Plaintiff TQL. He is bound by TQL's "Employee Non-Compete, Confidentially, and Non Solicitation Agreement" (the "Agreement"), which he signed on March 31, 2014, a true and accurate copy of which is attached as Exhibit 4. His employment terminated on September 15, 2017.

5. The Defendant Cameron Brown ("Brown") is a former employee of the Plaintiff TQL. He is bound by TQL's "Employee Non-Compete, Confidentially, and Non Solicitation Agreement" (the "Agreement"), which he signed on May 29, 2012, a true and accurate copy of which is attached as Exhibit 5. His employment terminated on December 16, 2016. (The individual Defendants are collectively referred to as "The Former Employee Defendants").

6. This action results from The Former Employee Defendants' violation of their Agreements and misappropriation of TQL trade secrets. Upon information and belief, The Former Employee Defendants are currently employed by Covar Transportation d/b/a Covar Brokerage ("Covar"), a TQL competitor.

7. Furthermore, Covar is aware of the Agreement but continues to employ The Former Employee Defendants.

8. These acts, as more fully stated herein, are all in violation of the Agreement and Ohio law.

9. TQL seeks temporary, preliminary, and permanent injunctive relief as well as damages and its attorney's fees in addition to other relief.

## PARTIES

10. TQL is an Ohio limited liability company that is engaged in the highly competitive business of providing freight brokerage services in every state in the continental United States.

11. As a third party logistics company, TQL has no trucks of its own. Instead, it is a broker. It links entities with freight with over-the-road carriers. For its services, TQL receives a fee.

12. TQL has expended substantial resources over many years to create and to protect the highly confidential information necessary to build and maintain a significant national business presence and to compete effectively against other freight brokerage services.

13. The Former Employee Defendants are individuals who were trained and employed by TQL. Upon information and belief, The Former Employee Defendants are presently employed by Covar where they are in direct competition with TQL and in contact with TQL customers and carriers in violation of the Agreement.

14. Upon information and belief, the Defendant Covar is a third party logistics broker. It conducts business in Ohio. It directly competes, or is attempting to directly compete, with TQL in the freight brokerage industry.

### JURISDICTION AND VENUE

15. This Court possesses subject matter jurisdiction by virtue of the relief requested which includes (but is not limited to) injunctive relief and damages in excess of $25,000.00.

16. Venue and jurisdiction are appropriate in Clermont County.

17. This Court has jurisdiction over the persons of the Defendants who are either located in Ohio, conduct their business in Ohio, have transacted business in Ohio and/or are causing tortious injury in Ohio.

## THE FORMER EMPLOYEE DEFENDANTS BECAME EMPLOYED BY TQL AND SIGNED A NON-COMPETE AGREEMENT

18. The Former Employee Defendants are former TQL employees.

19. After hiring The Former Employee Defendants, TQL provided them with extensive training on TQL's services, pricing structure, sales strategies, customers, and general operations.

20. On average, it takes a new TQL employee twenty-six weeks to complete the TQL training program. With respect to The Former Employee Defendants, TQL provided this training to them at considerable expense to itself.

21. In addition, throughout their employment, TQL entrusted The Former Employee Defendants with highly confidential business information and trade secrets, including information on TQL's specialized software, client relationships, pricing, marketing, sales lists, customer lists, motor carrier lists, and business strategy.

22. TQL has protected the confidentiality of this information through a number of methods—including internal controls that prevented employees from downloading or printing certain information. TQL also guards its confidential information with computer passwords. TQL constantly changes these passwords in order to maintain secrecy.

23. In addition, to protect its investment in its employees and to safeguard its confidential information from disclosure, TQL requires all of its employees to agree to TQL's "Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement."

24. The Former Employee Defendants voluntarily signed the Agreement as a condition of their employment with TQL.

25. By signing the Agreement and maintaining employment with TQL, The Former Employee Defendants agreed to the following terms (among others):

   a. To maintain the secrecy of TQL's confidential information and to use such information only for TQL's benefit;

   b. To return to TQL all confidential and company information upon the termination of their employment or upon TQL's request;

   c. Not to solicit TQL customers for a period of one year following the termination of employment;

   d. Not to make use of or disclose TQL's confidential information and/or trade secrets;

   e. To refrain from recruiting certain TQL employees for a period of one year following termination of employment with TQL; and

   f. Not to compete against TQL or to work for a TQL competitor for a period of one year following termination of employment with TQL.

26. Furthermore, under the express terms of the Agreement with TQL, The Former Employee Defendants acknowledged that TQL develops and maintains certain confidential information (including customer and carrier lists and pricing information) and that they would have access to this confidential information in order to perform their duties for TQL. The Former Employee Defendants further acknowledged that their violation(s) of the Agreement would potentially entitle TQL to damages, equitable relief, costs, expenses, and its reasonable attorneys' fees.

**THE FORMER EMPLOYEE DEFENDANTS JOINS COVAR – A TQL COMPETITOR**

27. Throughout their employment with TQL, TQL entrusted The Former Employee Defendants with highly confidential business information and trade secrets including information on TQL's specialized software and client relationships. The Former Employee Defendants also developed significant knowledge of and contacts with customers, carriers, and other persons doing business with TQL.

28. In their capacity with TQL, The Former Employee Defendants had access to and gained knowledge of extremely sensitive information pertaining to TQL's services, its software, its personnel, its customer lists, its methods, procedures and practices, its commission and fee rates, its sales figures and other business affairs, and its strategic business forecasts and plans including marketing strategies and targets. That information is highly confidential and proprietary in nature and is protected by TQL as a valuable business asset.

29. After their employment with TQL terminated, The Former Employee Defendants each joined Covar and began working in a position similar to the one that they held with TQL.

30. Covar directly competes with TQL as a third party logistics broker.

31. Covar is systematically targeting and intentionally hiring former TQL Employees in violation of the Agreements and despite Covar's knowledge of the Agreements.

32. At Covar, upon information and belief, The Former Employee Defendants have been in contact with TQL customers and carriers and attempted to and have converted TQL's business to Covar.

33. Based on their position with Covar, The Former Employee Defendants have and it is inevitable that they will use and disclose TQL's confidential and trade secret information to Covar.

34. The Former Employee Defendants are acting as a logistics broker and are soliciting TQL customers in violation of the Agreement—the obligations of which run at least one year.

35. The Former Employee Defendants have engaged in a purposeful course of conduct to unjustly enrich themselves by using the skills, contacts, business relationships, and knowledge developed by TQL – all to the competitive disadvantage of TQL.

36. The Former Employee Defendants have engaged in a purposeful course of conduct to misappropriate the confidential and proprietary business information and trade secrets of TQL.

37. Upon information and belief, The Former Employee Defendants intend, unless restrained, to continue to be employed by Covar, in direct competition with TQL, to misappropriate and convert business opportunities and trade secrets of TQL, to assist others in the misappropriation and unauthorized use of TQL's trade secrets and confidential information, and to unjustly enrich themselves and Covar by using the skills, contacts, business relationships, methods, and knowledge developed by TQL – all to their competitive advantage.

38. Upon information and belief, Covar has interfered with TQL's business relationships to the competitive disadvantage of TQL.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

39. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

40. The Former Employee Defendants entered into the Agreements with TQL.

41. The Agreement is reasonable.

42. Through their acts and/or the acts of their agents, The Former Employee Defendants breached the Agreement.

43. TQL has fully complied with the terms of the Agreement.

44. The Former Employee Defendants' breach of the Agreement has caused and will continue to cause TQL to sustain substantial monetary losses and other immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

45. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

46. The Former Employee Defendants owed fiduciary duties to TQL due to their position as an employee of TQL and due to the confidential information shared with them for their use on behalf of TQL.

47. The Former Employee Defendants' fiduciary relationship imposed duties of good faith, loyalty, and honesty on them.

48. By (among other things) misappropriating confidential and trade secret information belonging to TQL and assisting and working with a competitor, The Former Employee Defendants have breached their fiduciary duty, all to the injury and damage of TQL, and will continue to do so to TQL's irreparable harm unless they are restrained and enjoined.

## THIRD CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets)

49. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

50. TQL maintains confidential information pertaining to, among other things, its specialized software, pricing, services, personnel, customer lists, motor carrier lists, methods, procedures and practices, its commission and fee rates, its sales figures, the

customer relationships and productivity of its sales employees, and other business affairs as confidential and proprietary information.

51. This confidential business information constitutes a valuable business asset of TQL and is unknown to the general public and to the freight brokerage industry.

52. This confidential business information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, TQL's competitors.

53. The confidential information has been developed through the years by TQL at the expense of and for the exclusive benefit of TQL, and TQL has taken reasonable steps to maintain the secrecy of the information.

54. This information constitutes trade secrets under the Ohio Uniform Trade Secrets Act, §1333.61 through §1333.69 of the Ohio Revised Code.

55. As a TQL employee, The Former Employee Defendants have detailed and comprehensive knowledge of TQL's trade secrets and confidential information.

56. The Former Employee Defendants has begun employment with Covar – a TQL competitor.

57. The Former Employee Defendants' position with Covar is similar to the position he held during their former employment with TQL.

58. The Former Employee Defendants have misappropriated and, unless restrained, will continue to misappropriate trade secrets of TQL to their own use and the use of Covar.

59. The Former Employee Defendants have disclosed TQL trade secrets and confidential information to other employees and/or members of Covar who are wrongfully using this information to compete with TQL.

60. By their acts and conduct, Covar and The Former Employee Defendants and their agents have violated and are continuing to violate the Ohio Uniform Trade Secrets Act.

61. By their acts and conduct, Covar and The Former Employee Defendants have unjustly enriched themselves and have caused and are continuing to cause TQL actual and potential loss of business opportunities, loss of good will in the freight brokerage industry, and loss due to legal expenses and costs, including attorneys' fees, or will do so unless they are restrained.

62. This misappropriation of trade secrets by Defendants and their agents has caused and will continue to cause other immediate, substantial and irreparable harm to TQL, for which there is no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### (Intentional Interference with Contract and Unfair Competition)

63. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

64. Covar had knowledge of the Agreement and its terms at all relevant times.

65. Covar caused The Former Employee Defendants to compete with TQL, to divulge the trade secrets of TQL, and to wrongfully convert the business opportunities of TQL to the benefit of Covar.

66. Covar has intentionally, maliciously, and wrongfully caused The Former Employee Defendants to breach the Agreement.

67. By reason of Covar's conduct, TQL has been and continues to be damaged and deprived of benefits to which it is entitled pursuant to the Agreement.

68. Covar has been unjustly enriched as a direct and proximate result of its intentional interference and unfair competition, and Covar must disgorge profits and gain derived from its wrongful acts.

### FIFTH CLAIM FOR RELIEF

69. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

70. The actions of The Former Employee Defendants described above were willful, wanton, intentional, and demonstrated fraud, insult, malice, and/or a disregard of the rights of TQL.

71. Covar authorized, participated in, and/or ratified the actions of The Former Employee Defendants described above.

72. As a direct and proximate result thereof, TQL is entitled to punitive damages against the Defendants.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff TQL demands that judgment be entered in its favor against the Defendants as follows:

A. An award of temporary, preliminary, and permanent injunctive relief against Defendants and their agents, and enforcing Paragraph 9 of the Agreements and all subparagraphs contained therein for one year from the Court's final Order; and

B. Compensatory and punitive damages and attorney fees of a maximum cumulative total of $70,000.00 from each Defendant, individually and severally;

C. Awarding the costs and expenses incurred in connection with this litigation;

D. Awarding any other relief as this Court deems appropriate.

Respectfully submitted,

_____ (#0060122)
Barry F. Fagel
LINDHORST & DREIDAME
312 Walnut Street, Suite 3100
Cincinnati, Ohio 45202
(513) 421-6630
(513) 421-0212 (fax)
bfagel@lindhorstlaw.com
**Attorneys for Plaintiff**
**Total Quality Logistics, LLC**